UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 23, 2006[*]
Decided March 24, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 05-3643

| | |
|---|---|
| KELVIN BRENT HOLMES,<br>     *Plaintiff-Appellant,*<br><br>    *v.*<br><br>UNITED STATES DEPARTMENT<br>OF VETERANS AFFAIRS,<br>     *Defendant-Appellee.* | Appeal from the United States District<br>Court for the Northern District of Illinois,<br>Eastern Division<br><br>No. 04 C 2287<br><br>Matthew H. Kennelly,<br>*Judge.* |

**O R D E R**

The district court dismissed this tort action against the United States Department of Veterans Affairs on the ground that it was filed before plaintiff Kevin Holmes had exhausted his administrative remedies. We vacate the dismissal and remand for further proceedings.

Holmes was receiving outpatient care from the Drug Dependency Treatment Center at the Westside Veterans Administration Hospital in Chicago, Illinois. He

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R. App. P. 34(a)(2).

alleges that staff at the center "harassed" him during a December 2003 visit by insulting him and invading his privacy. When he "spoke out" against this abuse, he says, guards at the center forcibly escorted him to the Westside emergency room. While there, Holmes alleges, he was strapped to a bed, injected with substances in both arms, and rendered unconscious. The next day his keys and wallet were returned, and he was released. When he reached home, however, Holmes concluded that his appearance had been changed: his hair was "cut and thinned," his hairline was "raised," his eyebrows and mustache thinned, his beard left with "spots and gashes in it," and his "teeth had been bucked." According to his complaint, he also found semen stains in his underwear. By the end of the following month, Holmes continues, his lips had "collapsed," his right nostril was "stretched," and all of the hair on his chest, stomach, legs, and arms was gone. And, Holmes adds, after his release his identification has "looked different," photographs have disappeared from his wallet, and there has been "constant and suspicious rambling" in his home.

Holmes first sued based on these allegations in March 2004. Upon receiving the complaint, which arises under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680, the district court notified Holmes that his lawsuit could not proceed unless he first established that the VA had received and denied an administrative claim, *see id.* § 2675(a). When Holmes responded that he had filed an administrative claim but it was still pending, the court held that the suit was premature and dismissed it "without prejudice to filing a new action if and when the VA denies his administrative claim." The court also explained that, should Holmes refile after exhausting, "he should note on the 'Civil Cover Sheet' that the new case is a refiling" of the first.

In August 2004 the VA denied Holmes's administrative claim. In February 2005, three days before expiration of the six-month statute of limitations, *see* 28 U.S.C. § 2401(b), Holmes filed a motion to reinstate his original suit. At an April 2005 hearing on the motion, the government informed the court that it would simply move to dismiss the suit if reinstated because the revived action would carry the same March 2004 filing date and still be "premature" because that date was before Holmes exhausted his administrative remedies. Holmes responded that he "argued that point down in the office in administrative section" but was told he had to reinstate his original case. The court, rather than asking Holmes to elaborate, assured him that he need not "worry about that right now" because his motion to reinstate would be granted.

As promised the government moved to dismiss the reinstated action. The government argued that the suit, given that it was "reinstated" rather than a fresh action, was technically filed in March 2004 before the VA denied his administrative claim. Dismissal was thus compelled, the government contended, because under *McNeil v. United States*, 508 U.S. 106, 110-13 (1993), no suit under the FTCA can

proceed if instituted before the plaintiff has exhausted his administrative remedies. The court attempted to convene a hearing on the government's motion, but when Holmes said he was hospitalized and had been unable to prepare a response, the court dismissed based on *McNeil*. In its written order the court noted that it made clear to Holmes "when we originally dismissed his case that a new lawsuit would have to be filed," but that he "did not follow that advice."

On appeal Holmes does not disagree with the government's position that reinstating his lawsuit had the effect of reviving its original March 2004 filing date and thus compelled dismissal for a second time. But Holmes argues that the suit should be allowed to proceed because he *tried* to comply with the district court's order to refile his lawsuit but was thwarted by personnel in the clerk's office. As we read his brief, Holmes insists that he tendered a fresh lawsuit but was told by a court employee that he could not refile but instead must move to reinstate the original suit. According to Holmes, the employee would not accept his new lawsuit even after he showed her a copy of the district court's order directing him to commence a new action. The government counters that Holmes waived this argument by not presenting it in the district court, but we disagree. The government fails to acknowledge that Holmes told the court during the April 2005 hearing on his motion to reinstate that a court employee directed him to file a motion to reinstate rather than a new lawsuit. Holmes does a much better job here of describing what happened that day, but he said enough in the district court to give the government and the court reason to make further inquiry.

On the merits the government argues that Holmes is simply trying to excuse a "failure to follow the district court's directions" by blaming it on bad advice from an employee in the clerk's office. Generally a litigant cannot rely upon erroneous advice from a court employee. *See Sonicraft v. NLRB*, 814 F.2d 385, 387 (7th Cir. 1987); *Rezzonico v. H&R Block, Inc.*, 182 F.3d 144, 151-52 (2d Cir. 1999); *In re Pipkins*, 154 F.3d 1009, 1009 (9th Cir. 1998). But the rule is not absolute. *See Boudette v. Barnette*, 923 F.2d 754, 756 (9th Cir. 1991) (recognizing that "under some circumstances it is conceivable" that pro se litigant proceeding *in forma pauperis* might "reasonably rely" on information from court personnel); *see also Knight v. Schofield*, 292 F.3d 709, 710-11 (11th Cir. 2002) (holding that one-year limitations period for filing petition under 28 U.S.C. § 2254 was equitably tolled where clerk of state court waited 18 months to tell pro se petitioner about adverse state decision that triggered federal limitations period even after assuring petitioner that notice of decision would be mailed).

Regardless, we do not agree with the government's characterization of Holmes's position. Taking Holmes at his word, he did not ask or rely on the court employee for *advice* but instead complied with her *directive* to file a motion for reinstatement rather than a new lawsuit. Indeed, according to Holmes, he tried to

convince the employee that her interpretation of the court's order was wrong, and only because his lawsuit was refused did he follow her wishes. *Cf. Rezzonico*, 182 F.3d at 152 ("The clerk's office of course might not accurately interpret a judge's order, and parties should not rely on such sources to construe an order."). Holmes may well have misinterpreted what he was told or perhaps is recalling the events incorrectly, but that is for the district court to sort out on remand; if the events are as Holmes says, it would be manifestly unfair to fault him for following a directive that he did not invite and could not ignore, but which doomed his otherwise timely lawsuit.

The government does not argue that we should affirm the dismissal of Holmes's complaint on the alternative ground that it fails to state a claim. But to the extent that Holmes alleges that the VA altered his appearance, we recognize that his complaint is delusional. Still, insofar as Holmes alleges that he was taken to the hospital emergency room against his will and forced to undergo treatment while held overnight, we cannot conclude at this early stage that his complaint fails to state a claim. *See Cruzan v. Director, Missouri Dep't of Health*, 497 U.S. 261, 278 (1990) (explaining that "competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment"); *Estate of Allen v. City of Rockford*, 349 F.3d 1015, 1020 (7th Cir. 2003) (same); *see also Vitek v. Jones,* 445 U.S. 480, 493-94 (1980) (recognizing due process liberty interest in avoiding involuntary commitment to mental hospital); *Laxton v. Bartow*, 421 F.3d 565, 569 (7th Cir. 2005) (explaining on appeal challenging involuntary commitment that Due Process clause protects a person's freedom from physical restraint and that this freedom may only be overridden in limited circumstances).

The judgment is VACATED, and the case is REMANDED for further proceedings. If on remand the district court determines that the intervention of a court employee effectively prevented Holmes from refiling his lawsuit as directed, the court shall order Holmes to supplement his "motion to reinstate" with the new complaint he tried to file on February 17, 2005, and then allow the suit to proceed.